[993 NYS2d 767]

In the Matter of Kevin Michael Castro, an Attorney, Respondent. Grievance Committee for the Tenth Judicial District, Petitioner.

Second Department, October 15, 2014

### APPEARANCES OF COUNSEL

*Robert A. Green*, Hauppauge (*Michael Fuchs* of counsel), for petitioner.

*McDonough & McDonough, LLP*, Garden City (*Chris McDonough* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a petition dated March 4, 2013, containing four charges of professional misconduct emanating from the respondent's failure to honor his fiduciary obligations and to adhere to the rules relating to the maintenance of attorney special and business bank accounts. At the preliminary conference held on June 27, 2013, the Grievance Committee amended two factual allegations contained in charges two and three of the petition. After a hearing conducted on September 25, 2013, charge two was withdrawn by the Committee. The Special Referee issued a report dated November 20, 2013, which sustained charges one, three (as amended), and four. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems appropriate. In response, the respondent joins in the motion by the Grievance Committee to the extent that it seeks to sustain charges one, three (as amended), and four, and requests that the Court impose a sanction no greater than a public censure.

Charge one alleges that the respondent misappropriated funds belonging to other persons, entrusted to him as a fiduciary, for a

use other than for which they were intended, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), now Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (a), as follows:

This charge emanates from the respondent's services as an escrow agent on behalf of Portones del Mar (hereinafter Portones), a developer of condominium units in Panama. On December 24, 2008, the respondent received a down payment in the amount of $119,862, in connection with a sale, by Portones, to purchaser Ralph Grieco. The Grieco down payment was wired into the respondent's HSBC attorney special IOLA account (hereinafter the IOLA account). The respondent was directed to make three disbursements from the Grieco down payment, including one in the amount of $30,154 to Michael Rama, a principal of Portones. However, on December 26, 2008, the respondent improperly wired from his IOLA account the $30,154 disbursement intended for Rama, to the wrong individual, namely, Steven J. Houston. The disbursement to Houston was neither related to the Grieco transaction, nor authorized by Portones.

A second unauthorized disbursement occurred in connection with a different Portones transaction. On January 9, 2009, the respondent received a down payment totaling $169,758, related to the sale of condominium units by Portones to Omni Plumbing, Inc. (hereinafter Omni). Initially, the Omni down payment was wired into the respondent's IOLA account. Three days later, on January 12, 2009, the respondent transferred the Omni down payment into his HSBC attorney escrow account No. xxx-xx442-8 (hereinafter the attorney escrow account). The respondent was directed to make eight disbursements from the Omni down payment, including one in the amount of $122,176 to Rama. However, on January 16, 2009, the respondent improperly wired from the attorney escrow account the $122,176 disbursement intended for Rama to the wrong individual, namely, Houston. The disbursement to Houston was neither related to the Omni transaction, nor authorized by Portones.

The respondent asserts that both disbursements to Houston were the product of negligent mistakes. Houston was listed on the respondent's HSBC accounts as a payee in connection with earlier, unrelated business transactions. Concerning the first wrongful disbursement on December 26, 2008, the respondent claims that he did not verify that he had the correct payee before sending the wire request. The respondent's error was not

discovered until August of 2009, when it was brought to his attention by Rama. Once alerted, the respondent reviewed his bank statements, and confirmed his error. At that time, the respondent made no effort to contact Houston for reimbursement. Instead, on August 24, 2009, the respondent reimbursed Rama in the amount of $30,100 from an unrelated escrow account, in which he claimed to have accumulated personal funds. The second wrongful disbursement to Houston was not discovered until July 2011, some 2½ years after it occurred. Once again, the respondent's error was brought to his attention by Rama. Although the respondent made a limited effort to locate Houston, he has failed to reimburse Rama for the $122,176 due him.

By virtue of the two unauthorized wire transfers to Houston, we find that the respondent misappropriated funds entrusted to him as a fiduciary, which belonged to Rama, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), as then in effect.

Charge three, as amended, alleges that the respondent violated his fiduciary obligations by depositing personal funds into his attorney trust account, and utilizing his attorney trust account to pay expenses not related to client matters, in violation of former Code of Professional Responsibility DR 9-102 (a) and (b) (1) (22 NYCRR 1200.46 [a], [b] [1]), now Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (a) and (b) (1), as follows:

On December 11, 2009, the respondent deposited $73,529.35 into his HSBC law office account (hereinafter the law office account), representing the proceeds of a home equity loan obtained by his wife, Lisa Castro. About six weeks later, on January 29, 2010, the respondent transferred $73,595 from the law office account to his attorney escrow account. Predominantly, this transfer represented the home equity loan proceeds and, admittedly, was not related to any client matter, or deposited incident to the practice of law. The respondent thereafter disbursed 16 checks for personal and/or business purposes from the attorney escrow account, over the course of 10 months, totaling $66,246.09. None of the 16 checks was related to a client matter, and they were not issued incident to the respondent's practice of law.

In explaining his actions, the respondent asserts that the subject deposit was a "mistake," and a simple "oversight." This assertion is belied by the fact that the respondent first deposited the funds into his law office account, and thereafter transferred

the funds into his attorney escrow account. Accordingly, we find that the respondent violated his fiduciary obligations to the extent that he deposited personal funds into his attorney escrow account, and utilized his attorney escrow account to pay expenses not related to client matters, or incident to the practice of law, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (b) (1) (*see Matter of Schacht*, 80 AD3d 157 [2010]; *Matter of Hammer*, 253 AD2d 226 [1999]).

Charge four alleges that the respondent failed to deposit funds he was entrusted with as a fiduciary in an account that was separate from any business or personal accounts he maintained, in violation of former Code of Professional Responsibility DR 9-102 (b) (1) (22 NYCRR 1200.46 [b] [1]), now Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (b) (1), as follows:

In January 2010, the respondent, as an escrow agent, received four wire deposits, totaling $33,442.50, from South Coast Title Co., which he was required to deposit into an attorney special, trust, or escrow account, separate from any business or personal accounts. However, the funds were, in fact, wired into the respondent's law office account, not an attorney special, trust, or escrow account. Upon discovering the same, the respondent failed to transfer the funds into an appropriate attorney special, trust, or escrow account. Rather, he disbursed the funds from his law office account. In so doing, we find that the respondent failed to deposit funds entrusted to him as a fiduciary in an attorney special, trust or escrow account as required by Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (b) (1).

In view of the respondent's admissions, and the evidence adduced, we conclude that the Special Referee properly sustained charge one, charge three (as amended) to the extent indicated above, and charge four. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the Court has considered the respondent's disciplinary history, which consists of one letter of admonition and one letter of caution. By way of mitigation, the respondent asserts that his conduct resulted from a failure to properly manage his professional accounts, and that, in response thereto, he made changes to his practice. Additionally, the respondent submitted six character affidavits attesting to his reputation for integrity, honesty, and his charitable service to his community. Notwithstanding the evidence offered in mitigation, the respondent's repeated failure to honor his obligations as a fiduciary, includ-

ing the misappropriation of funds entrusted to him as a fiduciary; his failure to comply with basic requirements relating to the maintenance of attorney special and business accounts; and the unreimbursed pecuniary loss to Rama, as well as his disciplinary history, distinguish this matter from the matters offered by the respondent in support of a censure. Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of two years. Additionally, we find that the respondent's future reinstatement to practice should be conditioned upon his repayment to Rama of the funds misappropriated from the Omni transaction in the amount of $122,176.

ENG, P.J., MASTRO, RIVERA, SKELOS and CHAMBERS, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Kevin Michael Castro, is suspended from the practice of law for a period of two years, commencing November 14, 2014, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than May 16, 2016. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements (see 22 NYCRR 691.11 [c] [2]), (4) made payment of the misappropriated funds from the Omni transaction to Michael Rama, in the amount of $122,176, and (5) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension, and until the further order of this Court, the respondent, Kevin Michael Castro, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Kevin Michael Castro, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the re-

134

spondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).